12-2-8-8-5, or 17-2-8-8-5, United States v. Tyron Young. Mr. Moss, good morning. You may proceed. Good morning, Your Honor. May it please the Court. In this particular case, the sentencing judge relied on unsworn allegations from a confidential informant that was never cross-examined. The Court relied on that evidence, or that testimony, hearsay testimony, to apply a cross-reference that essentially doubled Mr. Young's guideline range from around four to five years to the statutory maximum. That cross-reference, or that evidence, was admitted based on the idea that the government had the testimony involved indicia of reliability. The problem with the ruling is that the government corroboration in this case also corroborated the defense theory, which was that the confidential informant was the shooter, the actual person that had shot into the dwelling on May 11th of 2016. And I believe there are really two ways to think of the informant. On the one hand, maybe he's an innocent bystander, just a mere tipster or witness. Or on the other hand, he is a participant in the crime, or possibly the actual perpetrator. I would submit to you the undisputed facts in this case demonstrate that it's much more likely the informant was the shooter, was the perpetrator. The government will not dispute the statement of Shaquanda Walker, which refers to an unknown male that's picked up right around 4.30 in the morning. That this unknown male goes to the scene of the shooting, and this unknown male is running back to the vehicle with Mr. Young. I don't believe the government will dispute that. And I think it's a fair inference, certainly I think it's one the court found, that this unknown male was the confidential informant. Now, what are the other undisputed circumstances that should cause the court to find, you know what, this evidence is not reliable, it doesn't, I have a real question about the reliability here. Well, number one, the DNA of the confidential informant is found on the slide of the firearm. And this is five days after the shooting, the police recover the firearm from Mr. Young, which he admitted it was his gun. He admitted he had owned the gun. And yet, the slide mechanism of the gun, they find DNA from the confidential informant. The government's brief says he was included as a possible contributor. The actual lab report, which was admitted as an exhibit, says the odds are 1 in 2020, odds that that was his DNA. So, pretty significant odds showing that the confidential informant at some point handled that gun and possibly moved the slide to load it or unload it. So that's one fact, it's undisputed, it's there in the record. What's another fact? Well, we know the confidential informant, after the shooting, he absconded. He absconded for a year. He didn't show up for a probation violation. We know he had cut off his ankle bracelet. We know he was gone for more than a year until he was finally arrested. And certainly there's jurisprudence in this court that says flight after an incident, that's evidence of consciousness of guilt. We would submit that also applies to the circumstances of this case. Despite the informant's relationship with law enforcement, which the government describes as several years, this confidential informant, we were able to subpoena this informant at the Jackson County Jail before he was released or before he made bond. We subpoenaed him, we tried to bring him to sentencing, we attempted to bring him to sentencing. He did not show up for sentencing. We would submit that also is a basis and a fact that the court should consider in determining whether or not such evidence is reliable. And again, these facts are undisputed here. Finally, the government theory in this particular case, and this is Government Exhibit 33, it shows the back of the house where the shooting occurred. There is a deck, a wooden deck at the rear in the backyard of this house. And it's a second story deck. And the government theory assumes that Mr. Young, who about a month prior had been shot several times in the leg, in the waist, in the face. About a month after that, in surgeries, he's able to scale basically a wooden beam to climb up to this deck and then fire into this house. That's what the government theory really rests on. Because there's no dispute the shooting occurred while the shooter was on this deck. So, we believe all of those undisputed circumstances show a finding that the informant was the shooter, not Mr. Young, and that would be a basis to exclude that testimony. While the government decision to not bring the informant in or to simply rely on the detective was a good decision, a good strategic decision, we believe that person should have been produced, the credibility of that person should have been exposed to the sentencing court. So, for those reasons, we ask that Mr. Young's sentence be reversed and remanded. Thank you. We have from the government, Mr. Kavanaugh. Good morning. Good morning, Your Honors. May it please the court, my name is Brad Kavanaugh. I'm an assistant United States attorney for the Western District of Missouri. I represented the government at Young's sentencing. Likewise, I filed the brief for the United States in Young's appeal. Young was sentenced to 115 months by the district court and the government respectfully asks that this court uphold the district court's rulings in all respects. The record shows that the hearsay statements introduced at sentencing hearing bore the necessary sufficient indicia of reliability to support his probable accuracy. Furthermore, Young had the opportunity to cross-examine the government's witness, to offer evidence, to rebut or explain the hearsay testimony. That was all afforded to this defendant at sentencing. Accordingly, the district court properly relied on those statements when applying the cross-reference of assault with attempt to commit murder. Now, additionally, there is a second issue in this matter that was raised on appeal. That being Missouri's attempted robbery in the second degree. Now, the district court correctly determined that Missouri's attempted robbery in the second degree is a crime of violence under the sentencing guidelines. Robbery qualified as a crime of violence under the enumerated felonies clause and the forced clause of the sentencing guidelines at the time of Young's sentencing on August 14, 2017. And robbery also qualified under the residual clause and forced clause of the guidelines at the time of the underlying offense, which occurred on May 16, 2016. For all these reasons, we respectfully suggest that this court should affirm the district court's rulings in Young's 115-month sentence. Now, as to issue number one, in response to my colleague's comments concerning the evidence of the confidential informant, all of that was presented to the district court at the sentencing hearing. And, in particular, what I would like to point out is that the conclusion of all the evidence, that being the witnesses presented by the government, that being the witness presented by the defendant, that being the evidence offered and exhibits offered by both the government and the defendant, at the conclusion of all of that, the district court stated, Mr. Young, the burden of proof the government must carry is by a preponderance of the evidence, which is lower. I will tell you, I believe they exceeded that. I believe they more than exceeded that burden. But all I have to find is the preponderance of the evidence. Now, again, this finding, this conclusion, falls within the sound discretion of the sentencing court. Now, moreover, at the conclusion of the evidence, the district court went on to state that it found the government's witnesses to be credible. And, once again, citing United States v. Wallstrom, a district court's assessment of a witness's credibility is almost never clear error, given the court's comparative advantage at evaluating credibility. The court, likewise, at sentencing, found the proper testimony of two of the witnesses to be good. And, thereafter, the district court determined that the cross-reference was appropriate, finding that, and I quote, clearly, unequivocally, more than necessary, the government has met their burden of proof. Things to consider with regard to the confidential informant statement. That statement, in and of itself, is not in a vacuum in this matter. There was corroborating testimony and facts presented at sentencing. The information relayed by the informant to Detective Straubel corroborated statements made by Young, by Young's girlfriend, Ms. Shaquanda Walker, of which there's been no objection to that testimony that was offered at sentencing, as well as the physical evidence observed and recovered by law enforcement, and in addition to the cast report prepared by Special Agent Williams with the Federal Bureau of Investigations. Now, what the confidential informant said leading up to the shooting, or prior to the shooting, is that the confidential informant and Young were picked up in North Kansas City by Ms. Walker. They were picked up in a black Dodge Dart that Young drove once they were picked up. Bless you, Your Honor. That the confidential informant was explicit where all of the occupants sat within the vehicle, the destination to which they went, and that Young and the confidential informant exited the car while Ms. Walker remained behind. All of those statements are consistent with what Ms. Walker offered. Then, at the location of the shooting, the physical evidence revealed that the shooter stood on the back deck and fired into the home. There were five shell casings that were recovered on the deck itself. That is consistent with the explanation the confidential informant gave as to how the shooting occurred, that Young got onto the deck, that Young peered into a window, and that Young fired multiple times into that home. One thing that I find of interesting note is that there was a suggestion that because Young had been shot a month earlier, that he possibly could have been infirmed and unable to climb. There is no such evidence of that, but what there is in the record is evidence of five days after the shooting, on the date in which he was arrested for possession of this firearm, he led law enforcement on a high-speed chase, he then exited the vehicle, and then on a foot chase, and was apprehended. He certainly could do all of those things. Another suggestion by the defendant in this matter, or Young in this matter, is the fact that it was in fact Young was the shooter, and that was the defense, or excuse me, that the C.I. was the shooter, and that Young was not responsible, and that the C.I. was pinpointing Young for this offense. However, there is absolutely nowhere in the record any motivation for the C.I. to have wanted to shoot Lewis Belton. That was the intended victim. That person was in the home at the time. That was the older brother of the 14-year-old. What we know is that during his in-custody interview, Young told Detective Porter that he in fact believed that Lewis Belton was the person responsible for shooting him. There's motivation in and of itself. What we also know is that how this information, the confidential informant, got into the hands of law enforcement was because the confidential informant reached out to law enforcement, contacted Detective Straubel, said that I have information concerning a shooting that occurred earlier that day, and it's by virtue of that contact to law enforcement that Detective Straubel later that same day meets with the confidential informant, and then they learn of the shooting, and he provides, again, more corroborating evidence. He describes where it is that Young is residing, who he's residing with, the type of vehicle that he is driving, the description of the firearm that was used during the shooting. All of that information was used by law enforcement to locate and apprehend Young five days later. And lo and behold, we find him with the same firearm. We find him driving the same car, all of which was described by the confidential informant. What is of interesting note is that the confidential informant's testimony of Young being present in the area at the time of the shooting, that corroborates Ms. Walker's testimony that Young was in the area at the time of the shooting. That's corroborated by the C.A.S.T. report. The only inconsistency we have is actually Young himself. Young is the only one that offers an inconsistent statement because he tells law enforcement, after his arrest, that actually at the time of the shooting, he is at Ms. Walker's apartment asleep, and that further, he knows no one, or none of his friends anyway, who would be responsible for this shooting. That would be the only inconsistency here, if there is an inconsistency. Now again, factors considered by this court in reviewing the reliability of hearsay, double hearsay, uncooperated hearsay, are the consistency of the hearsay statements, the timing and nature of the declarant's statements, and the witnesses' impressions of the declarant's demeanor, as well as other cooperating evidence. And what I would want to make mention is that Detective Straubel was in fact familiar with this informant, had known this informant three years prior to this shooting. Detective Straubel testified that this informant had proven reliable. Detective Straubel met again with this informant, and that meeting was not that Detective Straubel stumbled across the confidential informant and engaged in a conversation of, do you know about a shooting? It was the confidential informant reached out to him, and that is how the information was relayed. One other note that I would make is that there was an issue raised within Issue No. 1 as to the Confrontation Clause of the Sixth Amendment. They do not apply at sentencing hearings. There is a long-standing case law that says as much, but I did want to bring that to the Court's attention. Your Honor, it appears that I have 54 seconds left if there are no questions. Thank you. We thank you for your argument. Your Honor, I would submit Issue No. 2 on the brief. I believe that that issue is currently pending en banc in swopes. I believe swopes will determine the propriety of that issue. Unless the Court has some specific questions of me regarding Issue No. 2, I would just ask to submit that on the brief. Regarding some of the government's arguments, we agree the confidential informant contacted the detective the day of the shooting. The confidential informant was paid, I believe, $500 for that information. I just want the Court to imagine a second here. Early in the morning, a confidential informant is, even by the government's theory, is present, goes to the house, runs and flees, and then sometime later calls back the informant to provide this information for money. We believe that that is problematic, and it is not an issue of reliability that would justify admission of the statement. The detective in this case met with the confidential informant prior to him bonding out, after he had absconded for a year. The detective Strobel had a relationship with the confidential informant. At least in the probation violation context, there is a rule in this Court's jurisprudence that the government has to show some attempt to produce that witness. Now that, I have not found a case that applies that rule here in the sentencing context, but I certainly believe it is relevant to this Court's inquiry. Who had the power to compel this informant to show up at sentencing? I did everything I could do, and that was subpoena him, which he ignored. On the other hand, the government, Detective Strobel, met with him weeks before, and apparently had a relationship with him that went back several years, and yet they did nothing to produce this confidential informant at sentencing. Absolutely nothing. I would submit to you that is a strategic decision, and obviously a very wise strategic decision that paid off for them, because it allowed them to get a very severe sentence without actually having to produce this confidential informant for testimony. We agree that credibility is key, but what we think is key is the credibility of the informant. The judge in this case did not have an opportunity to evaluate that. I'd like to address just a few additional points. The government did say we had no objection to the admission of Ms. Walker's testimony. I didn't raise that as an issue on appeal, but we certainly made the same objections to that at the district court level at the sentencing. We made the same objections. The government also contends or speaks to the Court's findings of the standard of proof in the case. Absent the confidential informant's statement, there's not sufficient evidence to conclude that Mr. Young fired into that dwelling, even by a preponderance of the evidence. We believe, considering all the circumstances, many of which are undisputed, The bottom line here is if we're going to double Mr. Young's sentence and basically send him five months shy of the statutory maximum, after he pled guilty to the offense, we believe more is required. Based on the Court's authorities, we believe that the case should be remanded, and he should have a chance to cross-examine the informant based on all of the undisputed facts that would show the informant was the actual perpetrator. Thank you, Your Honors. Thank you for your argument. The case is now submitted, and we will take it under consideration.